IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

OMAYRA RODRIGUEZ-RIVERA
JOSE VAZQUEZ-NIEVES
and JONATHAN VAZQUEZ-RODRIGUEZ

Plaintiffs

vs

FEDERICO TRILLA HOSPITAL
SERVICIOS MEDICOS UNIVERSITARIOS
HOSPITAL A
INSURERS A, B AND C
COMPANIES A, B AND C
PERSONS A, B AND C

Defendants

CIVIL 05-2209CCC

**O R D E R**

This is an action for medical malpractice filed by plaintiffs Omayra Rodríguez-Rivera, José Vázquez-Nieves and Jonathan Vázquez-Rodríguez (Vázquez-Rodríguez) against the Federico Trilla Hospital (Trilla Hospital) and Servicios Médicos Universitarios (SMU).[1] Plaintiffs allege, in essence, that Vázquez-Rodríguez suffered serious injuries during his birth at Trilla Hospital due to the negligence of its personnel, and seek redress for their damages. Before the Court now are the Motion for Summary Judgment filed by defendant Federico Trilla Hospital d/b/a Servicios Médicos Universitarios, Inc. on September 26, 2006 (**docket entry 19**), plaintiffs' opposition filed on October 31, 2006 (**docket entry 30**), defendant's reply to the opposition filed on November 28, 2006 (docket entry 35) and plaintiffs' sur-reply to the reply filed on December 28, 2006 (**docket entry 48**).

SMU's dispositive motion is based on two arguments: (1) that as an affiliate corporation of the University of Puerto Rico it is immune from suit under the Eleventh Amendment, and (2) that it is not the party liable to plaintiffs for any of the tortious acts alleged in the complaint since it did not exist and was not managing Trilla Hospital at the time. Because upon reviewing

---

[1] The complaint also included several unknown defendants identified only as Hospital A, Insurers A, B and C, Companies A, B and C, and Persons A, B and C. All these unknown defendants, however, were dismissed on June 8, 2006 (see docket entry 14).

Civil 05-2209CCC                                    2

all the parties' briefs, submissions and attachments we find the second argument to be dispositive, we hereby GRANT the motion for summary judgment.

The pertinent facts on the dispositive issue are undisputed. Trilla Hospital opened its doors in 1981 as a government-owned general acute care hospital in Carolina, Puerto Rico. Pursuant to an agreement entered into between the Puerto Rico Department of Health (Health) and HMCA P.R. (HMCA), a private corporation, the latter managed Trilla Hospital when it started to operate. Although HMCA's management agreement was renewed several times during the decade, albeit with amendments, it was finally cancelled by Health effective on June 30, 1990. Plaintiff Vázquez-Rodríguez, meanwhile, was born at Trilla Hospital on June 23, 1988, during HMCA's management period.

The record is devoid of information on who managed Trilla Hospital in the early 1990's once HMCA finished doing so, although it is not disputed that it continued to be owned by the Commonwealth. Then, in the late 1990's, Puerto Rico's reform of its public health system reached Trilla Hospital as in 1997 the Legislature of the Commonwealth authorized the University of Puerto Rico to create a non-profit corporation to operate a hospital attached to its medical science campus. As a result, defendant SMU was incorporated in 1997 as a non-profit corporation affiliated to the University. SMU began operating Trilla Hospital on November 16, 1998 following certain transfer of operations and sublease agreements by and among the University, Health and the Health Facilities and Services Administration of the Commonwealth. The University eventually bought Trilla Hospital (as well as the Diagnostic Treatment Centers of Trujillo Alto and Canóvanas) from the Commonwealth pursuant to an Asset Purchase Agreement (APA) subscribed on March 12, 1999.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)." "The mere existence of <u>some</u> alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original)   Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." <u>Ingram v. Brink's, Inc.</u>, 414 F.3d 222, 228-29 (1st Cir.2005).

Here, disposition of the issue of whether defendant SMU may be held liable for acts that occurred at Trilla Hospital before it even existed hinges on the terms and conditions of the APA.  The APA is a comprehensive contract which, as its name suggests, encompasses the transfer to the buyer of the assets composing Trilla Hospital and the two treatment centers.  The APA specifically provides in it clause 1.1 as follows:

> 1.1 Sale of Assets.  (a) Subject to the terms and conditions set forth in this Agreement on this date (the "Closing Date") and in this act (the "Closing"), Sellers transfer, assign, convey and deliver to Buyer, and cause the transfer, assignment, conveyance and delivery to Buyer of all rights, title and interests in and to certain tangible assets consisting of certain real properties, the buildings thereon, equipment, and machinery, whether installed or uninstalled, leasehold improvements, office equipment and furniture, certain telephone lines, licenses and other assets (of every kind, nature, character and description, whether real or personal, which are used in the Facilities), including all rights and interests which are held for use in or relating in any manner to the Facilities (hereinafter collectively the "Assets"), free and clear of all claims, liens, charges, liabilities, obligations, contracts, rights, options, security interests, mortgages, encumbrances and restrictions of any kind or nature, whether absolute, accrued, contingent or otherwise (collectively, the "Claims") except for Permitted Liens (as defined in Sections 3.2(c) and 3.3(c)).  The Assets herein sold, conveyed, assigned, transferred and delivered to Buyer are listed, without intending to limit thereby the generality of the foregoing description and identity of the Assets, in Schedule 1.1(a) attached hereto and made to form a part hereof.

The only liens transferred under the APA, as listed in its sections 3.2(c) and 3.3(c), are "minor imperfections of title and encumbrances, if any, which are not substantial in amount ...."

As if this language was not clear enough, the APA also contains several instances where it is particularly stated that the Buyer did not assume "any obligations or liabilities in connection

Civil 05-2209CCC                                    4

with or related to the Facilities or which may affect the Assets or to which the Facilities or the Assets are subject or by which they may be bound . . ., see section 1.9(a), or "any liabilities or obligations of the Sellers which relate in any manner to the operation of the Assets and the Facilities on or prior to the Closing Date...." See section 1.9(c).

       Thus, under the the plain terms of the APA, neither the University nor SMU assumed any liability for tortious events that took place at either Trilla Hospital or the two treatment centers before they were purchased by the University in 1999. While plaintiffs argue that the APA does not contain a definite clause through which the University specifically waived liability for any such malpractice claims that were filed after the execution of the APA, its absence is not surprising given the express terms of the APA. Such a clause, indeed, would have been superfluous. See generally Article 1233 of the Puerto Rico Civil Code, 31 L.P.R.A. §3471, which provides that when "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."

       Plaintiffs also claim that as the APA contains an indemnification clause in its Article 9, and they have also sued Trilla Hospital itself, if the hospital is eventually found liable for the malpractice acts alleged in this action then the University must satisfy the damages although it will be able to seek indemnification from Trilla Hospital's previous owners. We are not persuaded. APA's Article 9 provides, in its pertinent part:

> 9.2 Indemnification . . .
>
> (b) Each of the Sellers agrees to indemnify, defend and hold Buyer harmless from and reimburse Buyer and each director, officer, manager and affiliate of Buyer (the "Buyer Group"), and their successors and assigns, from and against all Damages asserted against, relating to, imposed upon or incurred by any member of the Buyer Group directly or indirectly, by reason of or resulting from (i) a breach of any representation, warranty or agreement of each respective Seller contained in or made pursuant to this Agreement, or (ii) any liability or obligation of Sellers and not assumed by Buyer as described in Section 1.9(a) hereof. Any provisions herein to the contrary notwithstanding, none of the Sellers shall indemnify defend or hold Buyer harmless from, or otherwise be responsible or liable to Buyer due to acts or circumstances not otherwise included in this Section 9.2(b). The responsibilities and obligations of the Department and AFASS under this Section 9.2(b) shall be joint and several.

Civil 05-2209CCC                                              5

It appears evident that in order for the indemnification clause of the APA to become effective, the University (or SMU through it) must not have assumed liability for the negligent acts alleged against it.  Thus, its invocation by the plaintiffs in their opposition to summary judgment contradicts not only some of their arguments against <u>brevis</u> disposition, but also ultimately foils their complaint's assertions that SMU is liable for the alleged acts of malpractice that took place at Trilla Hospital in 1988.  In any event, the only party here with the contractual right to invoke the indemnification clause would be the University through SMU, but it has opted instead to litigate this action and raise valid defenses against plaintiffs,  one of which we find to be dispositive.  Hence, plaintiffs' malapropos reliance on the APA's indemnification clause is vapid.

We need go no further.  Under the express terms of the APA, SMU is not liable for any of the tortious acts alleged in the complaint.  Accordingly, and for the reasons stated, the Motion for Summary Judgment filed by defendant Federico Trilla Hospital d/b/a Servicios Médicos Universitarios, Inc. on September 26, 2006 (**docket entry 19**) is GRANTED.  Judgment will be entered by separate order DISMISSING this action against sole remaining defendant Federico Trilla Hospital d/b/a Servicios Médicos Universitarios, Inc., with prejudice.

SO ORDERED.

At San Juan, Puerto Rico, on February 13, 2007.

                                                      S/CARMEN CONSUELO CEREZO
                                                      United States District Judge